**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**         **FOR PUBLICATION**
------------------------------------------------------------X
In re:                                                                      No. 07-11906 (BRL)

RITCHIE RISK-LINKED STRATEGIES                    (Jointly Administered)
TRADING (IRELAND), LTD., *et al.*,

                    Debtors.
------------------------------------------------------------X

APPEARANCES**:**

SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Telephone:     (212) 839-5300
Facsimile:      (212) 839-5599
By:     John G. Hutchinson
           Lee S. Attanasio

*Counsel for U.S. Bank National Association, as Securities Intermediary*

BRAVERMAN KASKEY, P.C.
One Liberty Place, 56th Floor
1650 Market Street
Philadelphia, Pennsylvania 19103
Telephone:     (215) 575-3800
Facsimile:      (215) 575-3801
By:     David L. Braverman
           Richard S. Julie

*Counsel for The Bancorp Bank*

Before: Hon. Burton R. Lifland
             United States Bankruptcy Judge

**MEMORANDUM DECISION AND ORDER GRANTING MOTION OF U.S. BANK
NATIONAL ASSOCIATION, AS SECURITIES INTERMEDIARY, TO ENFORCE THIS
<u>COURT'S JANUARY 17, 2008 SALE ORDER</u>**

Before the Court is the Motion (the "Motion") of U.S. Bank National Association

("U.S. Bank"), in its capacity as securities intermediary, to enforce this Court's January 17, 2008

Sale Order[1] approving the sale (the "Sale") of substantially all the assets of Ritchie Risk-Linked Strategies Trading (Ireland) II, Ltd. ("Ritchie Risk" or the "Debtor") to Nutmeg Life Settlement Trust ("Nutmeg" or the "Purchaser").  In particular, U.S. Bank seeks entry of an order enforcing the Sale Order's injunctive provisions against The Bancorp Bank ("Bancorp") to prevent Bancorp from pursuing, in any fashion or forum whatsoever, its purported death benefit claim against a life insurance policy purchased by Nutmeg pursuant to the Sale Order.  Bancorp counters that (i) the Motion should have been brought as an adversary proceeding, not a motion; (ii) the Court should permissively abstain from determining this matter; and, (iii) if the Court does not abstain, it should deny the Motion because Bancorp was not provided with adequate notice.

The ultimate subject of this Motion concerns the proceeds of a life settlement, also known as a Viatical settlement,[2] in an industry quasi-regulated to avoid abuse and fraud. Although the circumstances surrounding the transfers of ownership are somewhat obscure, disclosures at oral argument confirmed that a substantial economic interest in the underlying life insurance policy is shared by both the respondent Bancorp and David Braverman, one of its counsel in this proceeding and a member of the original law firm owner / seller of the life insurance policy.

As for the merits, for the reasons set forth below and at oral argument, the Court finds that the Motion need not have been brought as an adversary proceeding, permissive abstention is

---

[1] Order (A) Approving The Asset Purchase Agreement Between The Debtor And The Purchaser At the Auction, (B) Authorizing The Sale Of Substantially All Of The Debtor's Assets Free And Clear Of All Liens, Claims, Encumbrances And Other Interests, And (C) Granting Related Relief [hereinafter the "Sale Order"] (Dkt. No. 177).

[2] A viatical settlement often entails "the sale of a policy owner's existing life insurance policy to a third party for more than its cash surrender value, but less than its net death benefit" and "provides the policy owner with an [sic] lump sum," such that the "third party becomes the new owner of the policy, pays the monthly premiums, and receives the full benefit of the policy when the insured dies."  *See* Wikipedia, Viatical settlement, *available at* http://en.wikipedia.org/wiki/Viatical_settlement (last visited May 22, 2012).

inappropriate, and that Bancorp was afforded adequate notice. Accordingly, the Motion is GRANTED.

## BACKGROUND

**1. The Insurance Policy's Chain of Ownership Prior to the Sale**

Bancorp's interest in the Motion arises from an assignment of term life insurance policy number 17B685914 (the "Term Policy") issued on or about December 17, 2003, by Banner Life Insurance Company ("Banner") on the life of the Honorable Robert C. Daniels ("Daniels") in the amount of $3 million. At the time, Daniels was an equity owner and David L. Braverman ("Braverman") was a member of a law firm, Braverman Daniels Kaskey, Ltd. ("BDK"), which was the Term Policy's beneficiary and owner (and a loan recipient from Bancorp).

In July 2004, BDK granted Bancorp a lien on the Term Policy in connection with BDK's indebtedness loan no. 139002213-1 (the "Loan"), pursuant to a collateral security agreement (the "Collateral Assignment"). *See* Hutchinson Decl.,[3] Ex. H. Bancorp has alleged that, as of November 2011, BDK owed Bancorp a balance of approximately $504,000 in connection with the Loan, *see* Hutchinson Decl., Ex. I, which is still secured by the Collateral Assignment, *see* Objection,[4] p. 4.

Since BDK granted Bancorp a lien on the Term Policy, that policy has been owned by several entities. In June 2006, BDK transferred its ownership and beneficiary interest in the Term Policy to the Daniels Trust. On July 17, 2006, Banner granted the Daniels Trust's application to convert the Term Policy to a universal life policy and accordingly issued policy

---

[3] Declaration of John G. Hutchinson in Support of the Motion of U.S. Bank National Association, as Securities Intermediary, to Enforce this Court's January 17, 2008 Sale Order [hereinafter "Hutchinson Decl."] (Dkt. No. 390).

[4] Non-Party Bancorp Bank's Objection To Motion Of U.S. Bank National Association, As Securities Intermediary, To Enforce This Court's January 17, 2008 Sale Order [hereinafter the "Objection"] (Dkt. No. 392).

3

number 17B357078 (the "UL Policy" and, together with the Term Policy, the "Policy"). *See* Hutchinson Decl., Ex. L.[5]

On July 28, 2006, Coventry First LLC ("Coventry") purchased the UL Policy from the Daniels Trust pursuant to an insurance policy purchase agreement (together with Addendum 1.0 thereto, the "Coventry Purchase Agreement"). In connection with this and future sales of the Policy, each new buyer acquired the Policy subject to the misrepresentation that it was lien-free. Specifically, in the Coventry Purchase Agreement, the Daniels Trust expressly represented to Coventry that "[t]here are no Liens on the [UL Policy]." *See* Hutchinson Decl., Ex. N, ¶ 3.1(iv); *see also* Hutchinson Reply Decl.,[6] Ex. D, p. 2 (Daniels circled "no" above the query, "Is the policy subject to liens?"). Ritchie Risk then acquired beneficial ownership of the UL Policy from Coventry on August 18, 2006, with the representation that any transfer of the UL Policy would be made, "to [Coventry's] knowledge, free of any Lien imposed in favor of any third party." *See* Hutchinson Decl., Ex. DD ¶ 3.02(a)(ii)(B).[7]

**2. The Sale**

On June 20, 2007, Ritchie Risk commenced a voluntary case under chapter 11 in this Court.[8] In January 2008, Ritchie Risk and Nutmeg entered into an asset purchase agreement (the

---

[5] Bancorp's lien is on the Term Policy number 17B685914. It is not clear that the lien attached to the converted UL Policy bearing <u>new</u> policy number 17B357078. However, for purposes of this Motion the Court will assume that the lien against the UL Policy is perfected.

[6] Declaration of John G. Hutchinson in Support of the Reply of U.S. Bank National Association, as Securities Intermediary, in Further Support of the Motion of U.S. Bank National Association, as Securities Intermediary, to Enforce this Court's January 17, 2008 Sale Order [hereinafter "Hutchinson Reply Decl."] (Dkt. No. 399).

[7] As securities intermediary, U.S. Bank was the record holder of the UL Policy and held it in a securities account maintained for Ritchie Risk, as well as subsequent purchasers.

[8] On June 27, 2007, this Court entered an order pursuant to Federal Rule of Bankruptcy Procedure 1015(b) authorizing the joint administration of the Debtor's chapter 11 case with that of Ritchie Risk-Linked Strategies Trading (Ireland), Limited (together with Ritchie Risk, the "Debtors"). *See* Dkt. No. 25.

4

"APA")[9] pursuant to which Ritchie Risk was to sell a portfolio of life settlement assets (the "Assets"), including the UL Policy, free and clear of any future claims against the Assets or the Purchaser.

On January 17, 2008, this Court approved the sale of the Assets for a purchase price of more than $56 million. In connection therewith, the Court (i) permitted the free and clear status of the sale as proposed in the APA, (ii) specified that any future claimants with claims arising from purported liens in the Assets could bring those claims against only the sale proceeds, and (iii) enjoined such future claimants from asserting those claims against the Assets or the Purchaser. *See* Sale Order, ¶¶ 7-9.

In addition, with respect to notice, the Court specified that (i) the affidavit of service for previous insureds and policy owners was filed under seal (out of privacy and sensitivity concerns), *see* Sale Procedures Order,[10] ¶ 8; (ii) previous insureds, policy owners, and "all persons or entities known or reasonably believed to have asserted a Lien on the Assets" have received notice, *see* Sale Order, ¶ N; and (iii) the "published notice of the Sale Motion, the Sale, the time and place of the Auction and the time and place of the Sale Hearing in The Wall Street Journal" on October 5, 2007 (the "Wall Street Journal Notice") was "sufficient and reasonably calculated under the circumstances" to reach "parties who have claims against the Debtor, but whose identities are not reasonably ascertainable by the Debtor," *see* Sale Order, ¶ O; Hutchinson Decl., Ex. BB.

---

[9] Asset Purchase Agreement by and between Ritchie Risk and Nutmeg, dated as of January 11, 2008, and amended as of January 31, 2008 (Dkt. No. 84), Ex. E.

[10] Order signed on October 2 2007 (A) Approving Bidding Procedures In Connection With The Sale Of All Or Substantially All Of The Debtors Assets, (B) Approving The Form And Manner Of Notice, (C) Scheduling An Auction And Sale Hearing, And (D) Granting Related Relief [hereinafter the "Sale Procedures Order"] (Dkt. No. 98).

Approximately three years after the Sale, on October 3, 2011, Daniels passed away. Two days later, despite receiving notice of the Sale, Banner sent a letter to Nutmeg's servicer indicating that the UL Policy is subject to the Collateral Assignment with Bancorp. Bancorp subsequently submitted a death benefit claim (the "Bancorp Claim") to Banner against the UL Policy based on the Collateral Assignment between BDK and Bancorp securing the Loan, which still had an outstanding debt of approximately $504,000. On December 23, 2011, on behalf of Nutmeg, U.S. Bank filed with Banner a death benefit claim against the UL Policy in the amount of $3 million, the full death benefit, under cover of a letter denying the existence of Bancorp's purported lien.

### 3. The Delaware Action

On January 17, 2012, to resolve the competing death benefit claims against the UL Policy, Banner filed a complaint for statutory interpleader against Bancorp and U.S. Bank in the United States District Court for the District of Delaware (the "Delaware Court"). Banner interpleaded the UL Policy death benefits into the registry of the Delaware Court, seeking a determination of the respective rights of Bancorp and U.S. Bank (the "Delaware Action"). Shortly thereafter, U.S. Bank filed the instant Motion to enjoin Bancorp from pursuing any claim against the UL Policy, including in the Delaware Action. U.S. Bank and Bancorp have been granted extensions to respond to Banner's interpleader complaint while this Court adjudicates the Motion.

### 4. Bancorp Counsel's Economic Interest in the Motion

Braverman serves as Bancorp's counsel in the instant Motion and has a direct and significant economic interest in its outcome. Specifically, as of May 8, 2012, Braverman was a

6

guarantor and BDK was an obligor of the debt owed to Bancorp, *see* Hr'g Trans.,[11] pp. 12-13, which as of November 2011, was more than $500,000, *see* Hutchinson Decl., Ex. I. In addition, Braverman's interest in the Motion appears to exceed that of his client, as payments against the debt owed to Bancorp are current. *See* Hr'g Trans., pp. 12-13 ("A payment has never been missed. . . . It is current . . . .").[12]

## DISCUSSION

### I. THE MOTION NEED NOT HAVE BEEN BROUGHT AS AN ADVERSARY PROCEEDING.

As a threshold matter, contrary to Bancorp's argument, the Motion need not have been brought as an adversary proceeding since U.S. Bank seeks only the enforcement of an injunction already in effect under this Court's existing Sale Order, not the issuance of a new injunction. Indeed, "an adversary proceeding is not necessary where the relief sought is the enforcement of an order previously obtained." *See In re WorldCorp, Inc.*, 252 B.R. 890, 895 (Bankr. D. Del. 2000); *see also Luan v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223 (2d Cir. 2002) (confirming bankruptcy court jurisdiction to enforce injunction provision in its sale order without adversary proceeding).

### II. PERMISSIVE ABSTENTION IS INAPPROPRIATE UNDER THESE CIRCUMSTANCES.

When determining whether to exercise permissive abstention, courts consider a number of factors, *see In re Motors Liquidation Co.*, 457 B.R. 276, 289 (Bankr. S.D.N.Y. 2011), not all of which need be applied, *see In re Portrait Corp. of Am.*, 406 B.R. 637, 642 (Bankr. S.D.N.Y. 2009). The court should balance the factors "heavily . . . in favor of the exercise of jurisdiction." *Id.* (citations omitted).

---

[11] Transcript of Motion Of U.S. Bank National Association, As Securities Intermediary, To Enforce This Court's January 17, 2008 Sale Order Before Honorable Burton R. Lifland United States Bankruptcy Judge [hereinafter the "Hearing Transcript"].

[12] At this time, the Court expresses no opinion as to the propriety of Braverman's representation of Bancorp.

Bancorp asserts that this Court should permissively abstain here, as it did in *In re Dana* because adjudication of this dispute will require the Court to address non-bankruptcy issues and apply state and constitutional law. *See In re Dana*, No. 06-10354, 2011 WL 6259640, at *5 (Bankr. S.D.N.Y. Dec. 15, 2011) (abstaining where resolution of the issues centered on application of federal labor law).

This Court finds permissive abstention inappropriate for two principal reasons. First, bankruptcy courts should enforce and construe their own orders, particularly when doing so can protect a free and clear purchaser from successor liability. *See Motors Liquidation Co.*, 457 B.R. at 289, 291 (finding a "classic example" of when "bankruptcy courts (like others) need the ability to enforce their orders, and to construe them if necessary. . . . is where a sale order conveys assets free and clear of claims, and someone nevertheless brings suit in another court in an attempt to assert successor liability").

Second, non-bankruptcy law issues do not clearly predominate over bankruptcy ones. The only issue before the Court is whether to enforce its Sale Order, the adjudication of which does not involve any complicated non-bankruptcy law and is "worthy of greater protection from being upset by later motion practice." *In re Lehman Brothers Holdings Inc.*, 445 B.R. 143, 149, (Bankr. S.D.N.Y. 2011). Contrary to Bancorp's suggestion, the Court need not examine whether Bancorp had a perfected lien in the Term Policy or which state's law should be applied to such question, as U.S. Bank has assumed that Bancorp had a perfected lien for the purposes of the Motion. Nor must the Court determine whether Bancorp has a claim against Banner or the Daniels Trust, as neither is named here and such a determination does not, in any way, bear on whether the Debtor provided adequate notice. Indeed, all this Court need address is whether to

8

enforce the Sale Order, which turns solely on the adequacy of the notice afforded here. Therefore, the Court declines to permissively abstain from determining the Motion.

### III. THE DEBTOR PROVIDED PROPER NOTICE OF THE SALE ORDER.

The crux of this decision focuses on whether the Debtor provided adequate notice of the Sale Order. Bancorp emphasizes that it did not receive actual or constructive notice of the Sale Order until October 2011, more than three years after such Order was entered. Specifically, Bancorp asserts that (i) it is not bound by the Sale Order because it was a known creditor who did not receive actual notice as a result of the Debtor's inadequate efforts to identify reasonably ascertainable creditors, and (ii) even if Bancorp was not a known creditor, the Debtor did not provide sufficient constructive notice of the Sale because neither the Wall Street Journal Notice, nor any of the documents filed on the docket, listed the requisite specifics of the UL Policy. Bancorp therefore contends that it is entitled to pursue the Bancorp Claim in the Delaware Action.

As a preliminary matter, the Debtor was reasonable in relying on previous affirmative representations given by the Policy's predecessor owners regarding the lien-free status of the Policy. Coventry, Ritchie Risk, and U.S. Bank each received representations that there were no liens on the Policy. The Daniels Trust affirmatively represented to Coventry that there were no liens on the UL Policy. *See* Hutchinson Decl., Ex. N, ¶ 3.1(iv); *see also* Hutchinson Reply Decl., Ex. D, p. 2. Coventry made the same representation to Ritchie Risk. *See* Hutchinson Decl., Ex. DD ¶ 3.02(a)(ii)(B); *see also* Motion, ¶ 44 n.13 ("To U.S. Bank's knowledge, Banner . . . affirmatively advised Coventry prior to the [Sale] that there were no liens or collateral assignments on the UL Policy."). Finally, as recently as 2010, Banner itself represented to U.S. Bank that there were no liens or collateral assignments on the UL Policy. *See* Hutchinson Decl.,

9

Ex. Z (Banner's representative responded "n/a" to inquiry as to whether "current records show any assignments, encumbrances, or liens of record [on the UL Policy]"); *see also Shred-It USA, Inc. v. Mobile Data Shred, Inc.*, 228 F. Supp. 2d 455, 463 (S.D.N.Y. 2002) (finding buyer reasonably relied on seller's representation regarding the lien-free status of certain property on which the seller previously granted a security interest to a third party), *aff'd*, 92 F. App'x 812 (2d Cir. 2004).

Further, the Court is not persuaded, by either of Bancorp's assertions. In particular, the Court finds that the Debtor made adequate efforts to reasonably ascertain whether there were any creditors by searching through its books and records, and therefore, Bancorp was not a known creditor entitled to actual notice. In addition, the Wall Street Journal Notice included appropriate information regarding the Sale, and as such, the Court finds that the Debtor provided sufficient constructive notice of the Sale.

**1. Notice Standard**

To comport with due process requirements, "a party seeking relief must provide notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Morgan Olson, LLC v. Frederico (In re Grumman Olson Indus.)*, 445 B.R. 243, 254 (Bankr. S.D.N.Y. 2011) (quotations and citations omitted). That notice must "convey the required information" and "afford a reasonable time for those interested to make their appearance." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (citations omitted). In particular, section 363(b) of the Code "requires notice and a hearing before assets can be sold outside of the ordinary course of business," and a sale order under section 363(f) of the Code that "purports to free a purchaser from the debtor's liabilities does not bind parties in interest that did not receive appropriate

notice of the sale." *In re Grumman Olson Indus.*, 445 B.R. at 254. Whether a creditor received adequate notice, however, "is a fact-specific inquiry and depends on the facts and circumstances of each case." *DePippo v. Kmart Corp.*, 335 B.R. 290, 295 (S.D.N.Y. 2005). As a result, "unless a creditor is given reasonable notice[,] . . . its claim cannot be constitutionally discharged." *Id*.

To determine whether notice was reasonably given, "[t]he proper inquiry is whether the [noticing party] acted reasonably in selecting means likely to inform persons affected, not whether [a particular party] actually received notice." *Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988). In this regard, "what constitutes 'reasonable notice' principally depends on the status of the parties[,] and whether the creditor is a 'known' creditor or an 'unknown' creditor." *DePippo*, 335 B.R. at 295 (citations omitted). Actual notice is required for "known" creditors, while constructive notice is sufficient for "unknown" creditors. *Id.* at 295-96; *Grant v. U.S. Home Corp. (In re U.S.H. Corp. of New York)*, 223 B.R. 654, 658 (Bankr. S.D.N.Y. 1998).

**2. Bancorp Was Not A Known Creditor Entitled To Actual Notice**

Bancorp was not a known creditor entitled to actual notice. As indicated by the Supreme Court, a "known" creditor is one whose identity is either known or "reasonably ascertainable" by the debtor. *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 490 (1988). A "creditor's identity is 'reasonably ascertainable'" if that creditor can be identified through "reasonably diligent efforts." *In re U.S.H.*, 223 B.R. at 659 (quoting *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 n.4 (1983)). Reasonable diligence does not necessitate "impracticable and extended searches . . . in the name of due process." *DePippo*, 335 B.R. at 296 (quoting *Mullane*, 339 U.S. at 317) (internal citation omitted). Instead, reasonable diligence involves a search focusing "on the debtor's own books and records." *Id.*

11

Here, the record clearly reveals that the Debtor made reasonably diligent efforts to search through its books and records to identify creditors, yet Bancorp's interests did not become apparent as a result of such efforts. Specifically, the Debtors undertook a review of "hundreds of thousands of pages of documents," *see* 2007 Hr'g Trans.,[13] p. 4; Sale Procedures Order, ¶ 8, as well as all the policies that the Debtors provided to potential bidders, *see* Sale Order, ¶¶ G, H. Moreover, it appears the Debtors conducted this review with an aim towards providing "all known creditors of the Debtors [as well as] all persons or entities known or reasonably believed to have asserted a Lien on any of the Assets" with a reasonable opportunity to object or be heard. *Id.* Sale Order, ¶ N.

Bancorp nevertheless argues that the Debtor did not adequately search for known creditors because the Debtor did not contact Banner to inquire about possible liens on the UL Policy. But this argument is unpersuasive because requiring a debtor, as proposed by Bancorp, to contact every insurer about any possible lien on each insurance policy to be sold in a free and clear sale involving hundreds of similar policies, is well beyond the requirements of due process jurisprudence. Specifically, "[w]hile a debtor must directly notify entities identified as creditors in the debtor's records, a debtor is not required to search elsewhere for those who might have been injured." *Curatola v. Saint Vincent's Catholic Med. Centers of N.Y.*, No. 07-CIV-8257, 2008 WL 1721471, at *1 (S.D.N.Y. Apr. 10, 2008) (internal quotations omitted). Indeed, "impracticable and extended searches in the name of due process" are not required because, in some cases, they "completely vitiate the important goal of prompt and effectual administration and settlement of debtors' estates." *In re U.S.H.*, 223 B.R. at 659 (internal quotations omitted). Such would be the case here if the Debtor were required to conduct the inquiry proposed by

---

[13] Transcript Of Hearing Held On December 6, 2007, Re: Debtor's Motion To Approve Bidding Procedures And Auction Process [hereinafter the "2007 Hearing Transcript"] (Dkt. No. 144).

Bancorp because the Sale involved hundreds of assets, only one of which was the UL Policy. *See PacifiCorp v. W.R. Grace*, No. 05-CIV-764, 2006 WL 2375371, at *10 (D. Del. Aug. 16, 2006) (finding a debtor was not required to conduct title searches of more than thirty relevant properties because "the breadth of such a search is not insignificant" since "the debtor would be obligated to search for numerous current and prior owners at numerous sites"). Furthermore, Bancorp fails to cite even one case supporting the imposition of such an inquiry. Instead, Bancorp relies only on cases involving creditors who appeared in the debtor's books and records or creditors who were obvious or known to the party defending the notice provided, neither of which was the case here. *See, e.g.*, *U.S. v. Nat'l Westminster Bank USA (In re Q-C Circuits Corp.)*, 231 B.R. 506, 512 (E.D.N.Y. 1999) (IRS was entitled to notice authorizing subsequent use of cash collateral, having filed a proof of claim in the debtor's case); *Walker v. Lee (In re Rounds)*, 229 B.R. 758, 763, 764 (Bankr. W.D. Ark. 1999) (the creditor claiming inadequate notice was inadvertently omitted from the debtor's mailing matrix and was a "known party in interest").

3. **Constructive Notice Of The Sale Was Adequate.**

As an unknown creditor, Bancorp was entitled to only constructive notice of the Sale, which was sufficient. A court determining the sufficiency of notice focuses on whether it was reasonable given all the facts and circumstances of the case. *See Weigner*, 852 F.2d at 649; *DePippo*, 335 B.R. at 295. With respect to constructive notice, publication of relevant information in a newspaper is sufficient, especially where "it is not reasonably possible or practicable to give more adequate warning." *Mullane*, 339 U.S. at 317; *see, e.g.*, *In re XO Commc'ns*, 301 B.R. 782, 794-795 (Bankr. S.D.N.Y. 2003) (finding publication notice in The Wall Street Journal satisfied due process rights of unknown creditors).

13

On behalf of Bancorp, Braverman argues that the Debtor did not provide adequate constructive notice of the Sale because neither the Wall Street Journal Notice, nor any of the documents filed on the docket, listed the specifics of the UL Policy. Here, however, "given all the facts and circumstances of the case," the Debtors' omission of these specifics is "reasonable" in light of the relevant privacy concerns, the language included in the Wall Street Journal Notice, and the corresponding docketed information. Specific insurance information was barred from publication by basic privacy rights, which also mandated filing the names of the insureds and the policy owners under seal. *See, e.g.*, Sale Order, ¶ N; Sale Procedures Order, ¶ 8. The Wall Street Journal Notice and the docket provided more than enough information to apprise a party with an insurance policy issued by Banner, and who knew the Debtors had an interest in that asset, of the potential relevance of the Sale to that party's rights. That Notice specified that the assets to be sold "comprise all right, title and interest of the Debtors in and to life insurance policies as specified in the APA," *see* Hutchinson Decl., Ex. BB, and the docket listed insurance policies by identification number and specified their carriers, in more than one case providing Banner as the issuer, *see* Asset Schedule,[14] Schedule B-9. In fact, courts in this district and others have consistently allowed free and clear sales to proceed with notices containing far less specificity than Bancorp demands. *See, e.g., In re Boston Generating, LLC*, Case No. 10-14419, (Bankr. S.D.N.Y. Oct. 12, 2010) [Dkt. No. 268], Ex. D (defining and describing assets as only "all or substantially all of the Debtors' assets"); *In re Hartford Computer Hardware, Inc.*, Case No. 11-49744, (Bankr. N.D. Ill. Feb. 9, 2012) [Dkt. No. 160] (same). Taking the above in tandem, this Court finds that the Debtor provided adequate constructive notice of the Sale.

\* \* \*

---

[14] Schedules of Assets and Liabilities for Ritchie Risk-Linked Strategies Trading (Ireland) II, Ltd. [hereinafter the "Asset Schedule"] (Dkt. No. 41).

It appears Bancorp's real grievance is that it was not aware Ritchie Risk had an interest in the UL Policy in the first place, which resulted in the loss of Bancorp's lien. Had Bancorp known the Debtor owned the UL Policy, the Wall Street Journal Notice and the Asset Schedule would have sufficiently apprised Bancorp of the Sale and its effect on Bancorp's rights, especially as Bancorp is a sophisticated commercial bank with assets totaling over $3 billion, and discovering the status of the Policy would not have required much more than a phone call to Banner, BDK, Coventry, Daniels, the Daniels Trust, Ritchie Risk, or U.S. Bank. As such, although the Court is not persuaded that strained notice theories should serve as a basis for Bancorp's finding recourse in the hide of a free and clear purchaser, *see In re Oyster Bay Cove, Ltd.*, 161 B.R. 338, 342 (Bankr. E.D.N.Y. 1993), the Court is not foreclosing Bancorp's further pursuit of any claim it may have in connection with its loss against any of the non-Purchaser parties potentially responsible for Bancorp's ignorance, some of whom may already be familiar to Bancorp's counsel.

## CONCLUSION

For the reasons set forth above, the Motion is GRANTED. Specifically, pursuant to the Sale Order, Bancorp is (i) directed to immediately withdraw, in all forms, any asserted lien or interest of any kind in the UL Policy or its proceeds and (ii) enjoined from litigating, prosecuting or otherwise pursuing the Bancorp Claim (including in the Delaware Court) against the UL Policy and any of the other assets purchased by Nutmeg pursuant to the Sale Order, in any fashion or in any forum whatsoever.

**IT IS SO ORDERED.**

Dated: New York, New York                                          /s/ Burton R. Lifland
      May 22, 2012                                                              United States Bankruptcy Judge